EDWIN C. BURLEIGH vs. CHARLES W. MULLEN, and others.

Penobscot.　Opinion July 26, 1901.

*Revolutionary Soldiers' Lands.　Distribution by Draft.　Death.　Evidence.*
*Resolves 1835, c. 39; 1836, c. 49.*

1. The Resolve of 1836, ch. 49, appropriating lands for the satisfaction of claims under a prior Resolve of 1835, ch. 39, in favor of soldiers of the Revolutionary War and their widows, provided that the distribution of the lots " shall be made by draft in such manner as the Governor and Council may direct." A drawing was had in January, 1837, by all persons who had then proved their claims.　Subsequently other persons proved their claims and were allowed to select undrawn, unsold lots in the order of proving their claims.　*Held;* that it was not necessary to order a new draft each time a claim was proved, and that a deed from the State of a lot thus selected passed title.

2. A person who was a sea-faring man went to sea nine years before the execution of a deed by a guardian of his heir, and had never been heard from during that time, and was supposed to be dead.　This was testified to, not by the wife or children, but only by a relative of the family who saw them during that time.　A petition was then addressed to the proper probate court reciting the death of the person and asking for the appointment of a guardian for his minor child.　The usual public notice was given, and the probate judge found the fact of the death and appointed a guardian.　*Held;* that in the absence of any evidence that the person was alive, the foregoing is sufficient evidence that he was dead.

See *Millett* v. *Mullen*, ante, p. 400.

On report.　Judgment for plaintiff.

Real action against Charles W. Mullen, James Rice, Millard E. Mudgett, Clarence S. Lunt and Joseph P. Bass, to recover lot 5, in Township Three, and lot 82, in Township Four, Indian Purchase, Penobscot county, and the mesne profits.

The case appears in the opinion.

*H. M. Heath* and *C. L. Andrews; Jos. Williamson, Jr.,* and *L. A. Burleigh,* for plaintiff.

*C. F. Woodard; P. H. Gillin;* and *J. D. Rice,* for defendants.

The only authority to convey Lot 82 was expressly limited to lots to be distributed by draft in such manner as the Governor and

Council might direct. As this Resolve expressly provided for the distribution of the lots by draft, neither the Land Agent nor the Governor and Council, nor both combined, could distribute the lots in any other manner than by draft. The Governor and Council were authorized by the Resolve to direct the manner of distribution by draft, but no other authority was conferred upon them. The Legislature alone could pass the law, and neither the Governor and Council, nor the Land Agent nor both combined, could amend it or pursue any course except in accordance with the authority expressly conferred upon them by the law, which was expressly to distribute the lots by drafts. This provision of the law that the distribution should be made by draft cannot be ·regarded as directory simply.· In the first place the language is peremptory. It is not that the distribution may be made by draft, but that the distribution shall be made by draft. Potter's Dwarris on Statutes, p. 223. Third parties, the owners of like certificates, were interested in the mode of distribution and had a right to insist that the distribution should be made in the manner prescribed by the law. The Surveyor General was directed to cause said two townships to be surveyed into lots of 200 acres each, which lots were to be distributed by the Land Agent to persons entitled to land under the Resolve of 1835 to whom certificates had not then been granted. Every holder of such a claim had an interest in the manner of distribution of the lots, and under the terms of this Resolve a right that the distribution should be fair and equitable and without discrimination. " Though the language of the statute is simply enabling, yet if it confers a power which concerns the public as well as individuals, it is not merely permissible, but it is mandatory." *Veazie* v. *China*, 50 Maine, 518. " The word 'may' in a statute is not to be construed 'must' or 'shall,' where the public interests or rights are concerned, and the public or third persons have a claim de jure that the power should be exercised." *Low* v. *Dunham*, 61 Maine, 566, 569. The State has not since acquiesced in the claim of ownership and possession of this lot by the party to whom said deed of John Hodgdon as Agent was given, or of those claiming under her. The case shows nothing from which any such acquiescence can be

inferred.  It does not show that she or anybody under her, has ever been in possession of the lot, or has claimed it or in any way assumed to act as its owner.  On the contrary, the case expressly shows the possession of the lot to be in other parties; that it has been conveyed repeatedly in the chain of defendants' title, and it is expressly admitted that, for the purpose of this case, the defendants and their predecessors in title have paid the taxes upon this lot to the State since 1845, a period of more than fifty years.  If acquiescence can show anything, it shows that the plaintiff's predecessors in title never claimed said lot, or assumed to act as its owner.  Death of Loten L. Brown is not proved.  1 Greenl. Ev. §§ 103, 104; *Stevens* v. *McNamara*, 36 Maine, 176; *Stinchfield* v. *Emerson*, 52 Maine, 465.  There is no evidence that Loten L. Brown, Jr. ever lived in Phippsburg or any where else, and there is no evidence that he had been absent from his home or place of residence for nine years.  The case only shows that at the time the deposition of the witness was taken, the wife and family were living at Phippsburg.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, PEABODY, JJ.

EMERY, J.  The published opinion in *Millett* v. *Mullen*, ante p. 400, governs this case to the extent of determining that the defendants have no title, and that the plaintiff's predecessors in title notwithstanding their delinquency in not paying state taxes have had revived in them by the state an heritable and conveyable title good against strangers to the state's title.  The only remaining question is what of that original title the plaintiff deraigns from those predecessors.

The demanded premises are Lot No. Five in Township No. Three, and Lot Eighty-two Township No. Four, Indian Purchase. As to the former lot the defendants do not question that the plaintiff deraigns title to one undivided-half of the lot.  As to the latter the defendants interpose two objections.

I.  The plaintiff's deraignment is under conveyances from the State Land Agent under Resolves granting land to soldiers of the Revolutionary war and their widows.  The Resolve of 1835, ch. 39, appropriated two townships for that object,—provided for their division into 200 acre lots,—for the selection of these lots by the beneficiaries,—and for a conveyance to each of the lot selected by him, according to priority of selection.  The next year 1836, by chap. 49, the legislature further appropriated Townships Three and Four of the Indian Purchase, to satisfy the claims under the former resolve of the preceding year.  It provided, however, that the distribution of the lots "shall be made by draft in such manner as the Governor and Council may direct."  The Governor and Council under this resolve directed that a drawing be had on the first Saturday in January, 1837, by all persons who had then obtained certificates of service entitling them to the benefits of the Resolve.  Such draft was made accordingly.  Lot 82 does not appear to have been drawn.  Subsequently, February 8, 1837, the Governor and Council voted that the new claimants obtaining their certificates after the date of the draft might select from the then vacant lots.  Mary Brainerd, a soldier's widow, established her claim and obtained her certificate January 27, 1837, after the draft.  She selected Lot 82 in Township Four, and the Land Agent conveyed the same to her.

The defendants contend that the provision in the Resolve of 1836 for a distribution by drawing was peremptory, and that the Land Agent and Governor and Council could not distribute in any other way, and that a conveyance of a particular lot selected by the beneficiary was void even though it was a lot not drawn or claimed by any one else.  While such a conveyance might be voidable at the suit of the State, or some grantee of the State, we do not think it is void.  The whole township, with certain immaterial exceptions, was "appropriated to satisfy the claims for service in the Revolutionary War under the Resolve passed March 17, 1835 (ch. 39)."  The claims had been recgonized by the previous Resolve.  Many of them had been established and certificates issued.  The two townships appropriated in the former resolve had

evidently proved insufficient to satisfy the claims established. Two more townships were appropriated by the latter Resolve. A sufficient number of lots in those townships were distributed by draft among the beneficiaries who had received certificates at the time of the draft. That drawing satisfied all certificates then obtained. Did the statute so peremptorily require a new draft whenever a new certificate was issued, before the holder could obtain his land, that a stranger may invoke the omission against the beneficiary? We think not. At the time of the passage of the Resolve many unsatisfied certificates were outstanding for lack of land appropriated. To avoid competition, or chance of favoritism, among these certificate holders, the legislature provided for the distribution of the lots among them by draft. After this had been done the purpose of that provision was satisfied. The few new claimants obtaining certificates after the drawing would not be in competition with one another and there was no chance for favoritism, if each was allowed to select a vacant lot in the order of establishing his claim and receiving his certificate. Whatever the State or its grantees may be able to do in the matter, we think the beneficiary who has proved his claim, received his certificate, and then surrendered it as satisfied by the conveyance of a lot out of the very land appropriated for that purpose, has a title good against strangers.

Though the deed of the Land Agent to Mrs. Brainerd was January 27, 1837, and the direction by the Governor and Council to so convey was given February 8th following, the vote is a sufficient ratification of the previous conveyance if their action was necessary.

II. The plaintiff deraigns title to an undivided fraction of Lot Eighty-two from one Loten L. Brown, through a conveyance from the guardian of his four minor children, duly appointed and authorized by the proper probate court. The defendants contend, however, there is no proper and sufficient proof that Loten L. Brown was deceased at the time. Moses King, Jr., was appointed guardian for these children in 1896 and executed and delivered his

deed as guardian, October 17, 1896. He was brother to Brown's mother and testified, substantially,—that Mr. Loten L. Brown was a sea-faring man and went to sea more than nine years before the execution of the deed, and had not been heard from for all that time, and was supposed to be dead,—that the witness had seen the mother and children during that time and that Mrs. Brown had never heard from her husband. In addition, we have the decree of the probate court appointing the guardian and authorizing the sale of this land as the land of the children of Loten L. Brown.

These decrees are not copied in the case, but "the execution, delivery and authority of the guardian to execute said deed are admitted." In the absence of words of limitation, we think this admission is broad enough to cover the fact and regularity of the guardian's appointment by the probate court upon the petition containing the usual allegations of jurisdictional facts, and after the usual public notice to all concerned. These proceedings indicate that the mother and the children and the public and the judge of the probate court of the county of Mr. Brown's domicil had not heard from him for at least seven years and believed him dead. In the absence of any evidence tending to show that he was alive, we think all the evidence proves that he was dead.

These objections being overruled, the defendants do not further deny that the plaintiff has deraigned title to twenty-three undivided sixtieth parts of Lot Eighty-two.

According to the terms of the report the mandate must be,

> *Judgment for the plaintiffs for one-undivided half part of Lot five in Township Three, and for twenty-three undivided sixtieth parts of Lot eighty-two in Township Four, Indian purchase. Damages to be assessed at nisi prius by the presiding justice.*